## Russell Kilborn & another *vs.* Loring G. Robbins.

One who takes a deed of warranty of land, which is duly recorded, and afterwards takes an assignment of a prior mortgage upon the same and another lot, may enforce the mortgage for its full amount upon such other lot, against the mortgagor or his subsequent grantee. And the fact that such grantee has become the assignee of a subsequent mortgage upon such other lot is immaterial.

Proof of a purchase of land, with full covenants of warranty, for less than its value, is no proof that the purchaser undertook to discharge a mortgage thereon, of the existence of which he does not appear to have had actual notice.

If a purchaser of land, with full covenants of warranty, afterwards takes an assignment of a prior mortgage upon the same and another lot, and the mortgagor afterwards conveys the other lot to one who takes possession thereof, and the assignee of the mortgage afterwards demands of such grantee the payment of the full amount of the face of the debt secured thereby, and payment is refused, and the assignee of the mortgage afterwards fails to comply with a request for an account of the money due upon his mortgage, and of the rents and profits of the mortgaged premises, and of the moneys paid for taxes, repairs and improvements thereon, and various other particulars relating to the same, and also omits for several years to renew the demand for payment of his mortgage debt, he is not thereby estopped to enforce his mortgage against such grantee, or one who has taken a title under him with notice of all the facts.

If a deed of land contains an express stipulation that the grantee shall assume and pay a debt secured by a mortgage existing thereon, a payment of such debt in pursuance of such stipulation, and a discharge of the mortgagor therefrom, will operate as a discharge of the mortgage.

A second mortgagee of land may maintain an action to foreclose his mortgage against one who holds the first mortgage and also the equity of redemption.

If a suit to foreclose a mortgage has been instituted, this court will not by injunction restrain the prosecution of it, although the holder of the equity of redemption offers in his bill to redeem.

Bill in equity praying for an injunction to restrain the defendant from prosecuting in the superior court two actions brought by him, one against Russell Kilborn, and the other against the other plaintiff, Mark Kilborn, for the purpose of foreclosing a mortgage, and, by an amendment, offering to redeem by paying such sum as might be necessary therefor.

After the former decision, overruling the demurrer to the bill, (4 Allen, 369,) the case was referred to a master, from whose report the following facts appeared:

Robert Kilborn, the former owner of the premises demanded by the defendant under the mortgage hereinafter described, mortgaged the same, with certain other land, to Jeremiah Atwood, on the 9th of April 1845, to secure the sum of $1260

and on the 13th of March 1849 conveyed the same, by deed of warranty, to Joel Kilborn, who on the same day mortgaged the same to Robert Kilborn, to secure the payment of an annuity of $167.70. On the same day Robert Kilborn conveyed the other land included in the Atwood mortgage, together with certain other real estate, to Russell Kilborn, who on the same day mortgaged the same to Robert Kilborn, to secure the payment of an annuity of $167.70, during his life, and, on the 22d of April 1851, Robert Kilborn executed to Russell Kilborn a release of said premises, the deed containing the following provision : " The premises are subject to a mortgage deed given by me to Jeremiah Atwood, for the sum of $1260, which he the said Russell Kilborn assumes and is to pay ; " and also a release of all his interest in the premises mortgaged to him by Joel Kilborn, as above described. The language of this release, so far as material, is copied in the opinion. The sum due to Atwood was accordingly paid on the 9th of April 1863, and the following statement was written upon the mortgage: " I, Jeremiah Atwood, the mortgagee named in this mortgage deed, given by Robert Kilborn, hereby acknowledge payment and satisfaction for the same, and therefrom discharge said Kilborn, his heirs and his assigns forever. J. Atwood and seal." On the 5th of June 1849, Joel Kilborn executed to Charles N. Emerson a mortgage, recorded June 7th 1849, of the premises conveyed to him by Robert Kilborn, consisting of fifty-four acres and thirty-three rods of land, and also another lot of land called the Leavenworth Grove lot, to secure the payment of a note of $313, and interest. On the 12th of June 1849, Joel Kilborn conveyed the Leavenworth Grove lot to the defendant by a deed of warranty, with full covenants against incumbrances, which was recorded · on the following day. On the 30th of November 1850, Emerson assigned his mortgage to the defendant, and the assignment was recorded on the same day. On the 2d of April 1850, Joel Kilborn executed to Mark Rossiter a mortgage of the lot of fifty-four acres and thirty-three rods, and Rossiter, after taking possession for breach of condition, assigned his mortgage to Russell Kilborn in August 1851. In June 1851

Joel Kilborn released his interest in the last mentioned lot to Russell Kilborn. In 1856 Russell Kilborn conveyed a portion of said lot to Mark Kilborn by deed of warranty.

The consideration named in the deed of Joel Kilborn to the defendant, of the Leavenworth Grove lot, was $1350; its value was then $1150; and the consideration paid was certain shares of stock, worth $900. The value of the lot of fifty-four acres and thirty-three rods in 1849 was $2700. Both lots have since much increased in value.

After purchasing the Emerson mortgage the defendant made two or three applications to Russell Kilborn for payment of the debt secured by it, and on one occasion exhibited to him the note, and claimed that the whole amount of it was due. Afterwards, on the 27th of August 1852, Russell Kilborn caused a notice to be served upon the defendant, requesting an account of the money due upon his mortgage, and of the rents and profits of the mortgaged premises, and of the moneys paid for taxes, repairs and improvements thereon, and various other particulars relating to the same. The defendant did not reply to this notice in writing, nor make any of the returns or statements called for therein; except again exhibiting the note and claiming that the whole of it was due, just prior to bringing his actions to foreclose the mortgage.

The defendant has been in possession of the Leavenworth Grove lot since his purchase of it in 1849; and the plaintiffs have been in possession of the lot of fifty-four acres and thirty-three rods, since June 1851. At the time of the conveyance by Russell Kilborn to Mark Kilborn in 1856, the latter knew the above facts respecting the title of the last named lot. Robert Kilborn died in 1857, and it did not appear that the condition of the mortgage to him was ever broken.

Upon these facts, the case was reserved for the determination of the whole court.

*I. Sumner*, for the plaintiffs. Russell Kilborn has a right to hold the premises against the defendant, as equitable assignee of the mortgage to Atwood, which he paid. *Hunt* v. *Hunt*, 14 Pick. 374. *Freeman* v. *McGaw*, 15 Pick. 82. *Barker* v. *Parker*,

4 Pick. 505. *Gibson* v. *Crehore*, 3 Pick. 475 ; S. C 5 Pick. 146. Also as assignee of the mortgage of Joel Kilborn to Robert Kilborn. The fact that the defendant paid only $900 for the Leavenworth Grove lot, and afterwards refused to render an account when requested, goes to show that he was to pay the Emerson mortgage ; and his conduct should estop him to enforce it. If, however, that mortgage can still be enforced, the Leavenworth Grove lot should contribute. 1 Washburn on Real Prop. 568, and cases cited. *Lyman* v. *Little*, 15 Verm. 576. *James* v. *Morey*, 2 Cow. 246. If Emerson still held his mortgage, Russell Kilborn, as holder of the Rossiter mortgage, could compel him to satisfy it upon the Leavenworth Grove lot; and the defendant can stand in no better position than Emerson could. In any event, the difference between the value of the Leavenworth Grove lot and the amount paid for it by the defendant, should be applied upon the Emerson mortgage.

*M. Wilcox*, for the defendant.

DEWEY, J. The plaintiffs have filed their bill in equity asking this court to restrain the defendant from further prosecuting two actions in the superior court against the plaintiffs severally, as occupants of distinct parcels of land, to foreclose a mortgage made by Joel Kilborn to Charles N. Emerson, bearing date June 5, 1849, to secure the payment of a note of $313, which mortgage and note were assigned by Emerson to the defendant on the 30th of November 1850. They allege in their bill that nothing is due upon said mortgage, or, if anything is due thereupon, that they should be charged with only a part thereof, alleging that the defendant is the owner of certain other premises that should be charged *pro rata* with payment of such sum. They also claim to be the lawful owners of certain prior mortgages, one made by Robert Kilborn to Jeremiah Atwood, and another made by said Joel Kilborn to Robert Kilborn. They also in their amended bill offer to pay whatever sums, if any, the court shall find to be justly due to the defendant as assignee of the said Emerson mortgage, which is properly chargeable on the lands they occupy.

The first inquiry is, whether the allegation of the plaintiffs as

to payment of the sum secured by the mortgage to Emerson has been sustained by the proof. Upon this point the plaintiffs have, in the opinion of the court, failed to maintain their allegation. Nor are any such facts shown as are requisite to sustain the defence of an equitable estoppel against the defendant's enforcement of his mortgage.

Assuming this to be so, the plaintiffs then insist that the entire premises described in the mortgage of Joel Kilborn to Emerson should be charged with the payment of the debt secured by that mortgage. Upon this point, it appears that the mortgage included not only the premises demanded of the plaintiffs in the 'suits against them, but also another parcel of land called the Leavenworth Grove lot. But this lot, after having been thus mortgaged to Emerson, was sold and conveyed by deed of warranty by the mortgagor to the defendant. The effect of this sale by the mortgagor of a portion of the mortgaged premises was to exempt the land thus sold from any contribution towards payment of the mortgage, as against Joel Kilborn, the mortgagor, and those claiming by subsequent conveyances from him. Such subsequent grantees would acquire no greater rights than the grantor had. As between the defendant and Joel Kilborn, and the subsequent grantee of Kilborn, the Emerson mortgage was after this sale chargeable on the fifty-four acre lot, and the owner thereof had no right to recur to the Leavenworth Grove lot for contribution. *Bradley* v. *George*, 2 Allen, 392. *George* v. *Kent*, 7 Allen, 16. *Welch* v. *Beers*, *ante*, 151.

The subsequent purchase of the Emerson mortgage by the defendant did not affect his right to have the Leavenworth Grove lot relieved from contribution towards the payment of it, such discharge from contribution having been fully effected at the moment of the conveyance with warranty by Joel Kilborn, the mortgagor.

No difficulty arises in the present case as to the Atwood mortgage, which was of a prior date to the Emerson mortgage. That mortgage is wholly discharged. It was paid by Russell Kilborn, who had taken a quitclaim deed of certain lands from

Robert Kilborn, the mortgagor, bearing date April 22, 1851, in which it was stipulated that the debt secured by this mortgage should be paid by said Russell Kilborn. The cases of *Wedge* v. *Moore*, 6 Cush. 8, *Bolton* v. *Ballard*, 13 Mass. 227, and *Brown* v. *Lapham*, 3 Cush. 551, seem to be decisive in requiring us to hold this to be a payment. The principle stated in these cases is to the effect that where the money is paid by one who has assumed the duty of paying the debts, by contract with the mortgagor, or those succeeding to his rights, this must be taken, as regards other subsequent interests, as a payment; and this must certainly be true when the party takes no assignment, but contents himself with a naked acknowledgment of payment and discharge of the mortgage indorsed thereon.

The defendant's rights are in no way affected by the mortgage of Joel Kilborn to Rossiter, that mortgage having been made subsequently to the Emerson mortgage, and also to the conveyance by Joel Kilborn to the defendant.

Nor do we see any ground for the position taken by the plaintiffs that it should be required by this court that the Emerson mortgage should be satisfied wholly out of the Leavenworth Grove lot, because the subsequent mortgage to Rossiter only embraced the other land. The mortgage to Rossiter was made subsequently to the time when the Leavenworth Grove lot was exempted from contribution by the sale with warranty to the defendant. On account of this subsequent title, those who hold interests under that mortgage cannot set up any claim in reference to the Leavenworth Grove lot, or subject it to contribution, either directly or indirectly ; much less charge the entire payment of the Emerson mortgage upon it, to the prejudice of the purchaser of the same from Joel Kilborn before the Rossiter mortgage existed.

The claim of the plaintiffs, that they have succeeded to the interest of Robert Kilborn, as mortgagee of the interest of Joel Kilborn, presents a question of more difficulty. This mortgage was dated March 13, 1849, and is therefore earlier in time than the Emerson mortgage, and covers the fifty-four acres demanded by the defendant in his actions pending in the superior court.

On the 22d of April 1851, said Robert, in consideration of one dollar, remised, released and forever quitclaimed unto said Russell, his heirs and assigns forever, " all my right, title and interest in and to the following real estate, all and singular the same premises conveyed to me by the said Russell by his mortgage deed to me, dated March 13, 1849." " Also all and singular the same premises described in a certain mortgage deed given me by Joel Kilborn, dated March 13, 1849."

The cases of *Hunt* v. *Hunt,* 14 Pick. 374, and *Barker* v. *Parker,* 4 Pick. 505, seem to support the position that this conveyance by Robert Kilborn to Russell Kilborn would pass the interest of Robert Kilborn as mortgagee in the mortgage made to him by Joel Kilborn. This would certainly be so, unless the surrounding facts, and the circumstances connected with the conveyance to Russell, should make it appear that this mortgage was to be treated as cancelled.

But assuming that this conveyance to Russell Kilborn was sufficient to pass to him the mortgage in question, then Russell Kilborn would be the owner of a mortgage prior in date to the Emerson mortgage. If he did thus become the holder of this mortgage, his rights as such assignee of the mortgage would not be defeated by his having become the owner of the equity of redemption of the premises. There has been no evidence introduced to show any breach of the condition of this mortgage. The case is barren of all evidence upon this point. If such prior mortgage exists, and there has been any breach of the condition, the defendant, as second mortgagee, can acquire the actual possession of the premises only by redeeming the same and paying such sum as may be justly due thereon. But the existence of such prior mortgage does not operate to defeat the actions by the defendant to foreclose his mortgage, Russell Kilborn holding the equity of redemption of the second mortgage, as well as the alleged title of assignee of the first mortgage. *Cronin* v. *Hazletine,* 3 Allen, 324. The judgment for the defendant as such mortgagee would be a qualified one, as to disturbing the possession of any one having a prior mortgage, but valid and effectual to foreclose the second mortgage as against

all titles subsequent to it. We do not perceive any necessity for maintaining this bill for the protection of the interest of Russell Kilborn, as assignee of the mortgage to Robert Kilborn.

The suits instituted by the defendant to foreclose his mortgage having been first instituted, this court will not sustain this bill and stay the proceedings in those suits, although the plaintiffs in their amended bill offer to pay all such sums as may be chargeable upon the lands held by them. The amount justly due upon the Emerson mortgage may be settled in those suits, and the payment of that sum will relieve the premises from all further charges thereon by reason of such mortgage.

*Bill dismissed.*